Sidney A. Fine, J.
In this proceeding petitioner seeks an order pursuant to article 78 of the Civil Practice Act vacating and annulling the determination of the police commissioner terminating his employment as a patrolman in the Police Department of the City of New York and an order directing his reinstatement with back pay. The termination was based solely upon a physical examination by police surgeons during petitioner’s probationary period which resulted in a finding of “unsatisfactory employee ” by the commissioner.
The following issues were framed by Mr. Justice McNally at Special Term (Matter of Going v. Kennedy, 3 Misc 2d 82, 86-87) and were tried without a jury:
1. Whether petitioner was notified of the termination of Ms services prior to midnight on July 31, 1955,
*924 2. Whether the finding of “ unsatisfactory employee ” in respect of the petitioner was arbitrary and capricious,
The parties waived findings of fact and conclusions of law.
The record discloses that petitioner is an honorably discharged war veteran, married and the father of three children. It also establishes that he was duly examined, qualified and certified by the Department of Personnel to the Police Department for appointment as a probationary patrolman. Prior to his appointment by the Police Department on February 1, 1955, petitioner successfully passed the required examination of two medical boards, the first known as the “ Qualifying Medical ” conducted by the Civil Service Commission, the second known as the “Pre-appointment Medical” conducted by the Police Department. The record is also replete with evidence and concessions that petitioner’s services during his entire probationary period were eminently satisfactory and free from any and all complaints which could warrant termination of his services as an unsatisfactory employee. His history and record as a probationary patrolman were duly appraised and evaluated and he was accordingly recommended to the police commissioner for permanent appointment by the commanding officers of both the Police Academy and the 28th Precinct.
Near the close of his probationary period petitioner’s blood pressure was twice examined by police surgeons (July 6 and July 28, 1955), and while the readings varied somewhat, he was rejected on the basis of “ the existence of a hypertension.” On July 30, 1955, the police commissioner ordered the termination of petitioner’s services effective midnight July 31, 1955 (the expiration of his probationary employment) and directed that petitioner be notified in writing to that effect ‘ ‘ in accordance with the provisions of law and the rules of the Department of Personnel, Civil Service Commission of the City of New York.” In taking this action the police commissioner did not seek or receive the approval of the director of personnel. Nor did the director ever revoke or rescind petitioner’s certification or appointment.
Petitioner contends that he does not have high blood pressure and that he was found medically fit by both the medical examiners of the Civil Service Commission and by the police surgeons prior to his original appointment. In explanation of the July 6 and July 28 findings he asserted that he was subjected to unusual and severe physical and emotional strain consequent upon his wife’s difficulty in bearing their third child and upon the death of a beloved grandfather. His physi *925 oían contradicted the findings of high blood pressure and testified that blood pressure may vary depending upon emotional and physical upset or stress. A police surgeon, on the other hand, testified in support of the findings of the medical bureau of the Police Department.
The court is first required to make a finding as to whether petitioner received notification of the termination of his services prior to midnight on July 31, 1955. Rule V (§ VIII, subd. 3, par. [a]) of the Rules of the City Civil Service Commission, in effect on February 1, 1955, provided: “ There shall be a probationary period of six months for all permanent appointments * * * At the end of such probationary period or periods the appointing officer may terminate the employment of any unsatisfactory employee by notice to the employee and the Director ” (of Personnel).
Petitioner was duly appointed on February 1, 1955, and urges that therefore his six-month probationary term ended midnight July 31, 1955. The police commissioner evidently concurred because in the written notice of termination of petitioner’s services, dated July 30, 1955, he wrote: “Effective midnight, July 31, 1955, therefore, your services in the Police Department of the City of New York will be terminated.”
The evidence adduced at the trial supports the opinion of Mr. Justice McNally (Matter of Going v. Kennedy, supra) that the six-month probationary period expired on July 31, 1955, and not August 1, 1955, as now argued by the respondents. To find that August 1, 1955, and not July 31, 1955, is the last day would negate the action taken by the commissioner, since petitioner could not be dismissed prior to the full expiration of his probationary period (People ex rel. Kastor v. Kearny, 164 N. Y. 64; People ex rel. Walter v. Woods, 168 App. Div. 3), except for specific cause such as misconduct or dishonesty (Matter of Murray v. Welles, 18 App. Div. 337). Mr. Justice McNally was also of the opinion (p. 86) that “ it was incumbent on the commissioner to terminate the appointment, if at all, on July 31, 1955.”
Petitioner contends that he was personally served with the letter of dismissal on August 1, 1955. This is supported by his written receipt appearing on the face of the duplicate original of the letter of dismissal produced by respondents. The writing signed by petitioner and witnessed by Lt. Brendan O’Sullivan of the Police Department evidences receipt of the original at 11:00 p.m. August 1, 1955. Lt. O’Sullivan’s oral testimony in explanation, that he attempted to make service on July 31, 1955 as directed by his superiors is not persuasive. *926 His evidence was given such weight as the court considered it merited in the light of all of the evidence. The court, therefore, finds that petitioner was not notified of the termination of his services prior to midnight on July 31, 1955, but in fact was so notified on August 1, 1955.
The court is also required to determine whether the police commissioner’s finding that petitioner was an unsatisfactory employee was arbitrary and capricious. Mr. Justice McNauly succinctly stated the controlling principle (p. 86): “ An appointing officer has a broad degree of discretion in determining whether to maké permanent a probationary appointee. However, this discretion is not unbounded. It is required to be related to a finding that the employee is unsatisfactory. Consequently it may not be arbitrary.”
The police commissioner asserts that the medical report made petitioner an unsatisfactory employee. Petitioner contends that the alleged condition found by the police surgeons during the probationary service does not constitute him an “ unsatisfactory employee ” within the meaning of the rule governing termination of employment of unsatisfactory employees at the end of the probationary term (Buies of New York City Civil Service Comm., rule V, § VIII, subd. 3, par. [a]). It is the petitioner’s claim that an employee is unsatisfactory only if the commissioner finds he lacks the ability or competency to perform the particular duties of the position to which he has been appointed; and that any finding as to physical fitness, even during the probationary term, must rest entirely with the Civil Service Commission.
Subdivision 4 of section 14 of the Civil Service Law empowers the Civil Service Commission to ‘ ‘ refuse to examine an applicant, or after examination to certify an eligible * * * who is physically so disabled as to be rendered unfit for his performance of the duties of the position to which he seeks appointment ”. Under this subdivision the powers of the Civil Service Commission extend only to applicants and eligibles and not to appointees, unless their appointment is due to illegality, irregularity in vital matters, or fraud. (People ex rel. Finnegan v. McBride, 226 N. Y. 252; Matter of Wolff v. Hodson, 285 N. Y. 197; Matter of Shraeder v. Kern, 287 N. Y. 13.)
However (by L. 1954, ch. 354) the Legislature amended the New York City Charter abolishing the Municipal Civil Service Commission and creating a Department of Personnel and a City Civil Service Commission. Subdivision f of section 813 *927 granted additional powers to the personnel director as head of the Department of Personnel, “to revoke or rescind any certification or appointment by reason of the disqualification of the applicant or appointee under the provisions of the civil service law, the rules of the civil service commission, or any other law.” (Italics supplied.)
Rule III (§ VII, subd. 1, par. [b]) of the City Civil Service Rules provides that “ Whenever the Director shall find during the probationary period that an appointee * * * is unfit mentally or physically to hold the position to which he was appointed, he shall be marked ‘ not qualified ’ and the certification of his name shall be revoked and his services shall be terminated.” (Italics supplied.)
Rule III (§ VII, subd. 2) provides that the director accord the probationer an opportunity to be heard after due notice to him prior to taking appropriate action as prescribed in paragraph (b) of subdivision 1. These rules now specifically define the powers vested in the personnel director by subdivision f of section 813 of the Charter.
In order to assure the most accurate inquiry into the physical fitness of patrolmen, the Department of Personnel has enunciated a policy of requiring examinations by two separate medical boards, one for the Department of Personnel and the other for the Police Department, and in the event of conflicting decisions, the finding of the medical examiner of the Department of Personnel upon re-examination controls. (See the Medical Standards and Regulations adopted by the Department of Personnel.) This policy is salutary in effect and reduces the possibility of error to a minimum, such as in examinations of blood pressure, where differences in findings create very difficult situations. By these regulations the Department of Personnel itself recognizes that blood pressures may vary from time to time. In the matter before this court there is sufficient evidence of an honest difference of opinion between the medical witnesses so that reasonable certainty is something left to be desired by further proof. Compliance with this procedure would have eliminated all doubt.
Absolute power is always repugnant to the concept of a free society even in the hands of the director of personnel. And so as an added protection it was provided in subdivision c of section 812 of the Charter and in rule III (§ VII, subd. 3) in effect February 23,1955, that any action or determination taken by said director is subject to appeal to the City Civil Service *928 Commission by any persons aggrieved thereby, and the commission may affirm, modify or reverse snch action or determination after due consideration of said appeal.
To approve of the police commissioner’s action in this proceeding would deprive petitioner of many safeguards, the right to notice, the opportunity to be heard and the invaluable procedural right of appeal for an adverse decision.
It is abundantly clear that the director of personnel and not the police commissioner may disqualify and terminate the services of a probationary appointee for physical unfitness.
The court finds that in failing to comply with the provisions of the New York City Charter and the Bules and Begulations of the City Civil Service Commission in not obtaining such an order from the director of personnel which would have to be based upon medical proof prescribed by law and thereby affording the petitioner the right to appeal from such order of the director of personnel, the police commissioner acted arbitrarily and capriciously. Consequently, the petition is granted and the petitioner is reinstated to the position of patrolman with back pay. The foregoing constitutes the decision o'f this court pursuant to section 440 of the Civil Practice Act. Settle order on notice.